## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 18 2015, 8:57 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

---

ATTORNEY FOR APPELLANT

David W. Westland
Westland & Bennett, P.C.
Schererville, Indiana

ATTORNEYS FOR APPELLEE

Tammy L. Ortman
Jennifer S. Ortman
Lewis & Kappes, P.C.
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Robert E. Helmer,

*Appellant-Plaintiff,*

v.

TLC Properties, Inc.,

*Appellee-Defendant.*

August 18, 2015

Court of Appeals Case No.
45A03-1501-PL-34

Appeal from the Lake Superior Court;
The Honorable William E. Davis, Judge;
45D05-1402-PL-10

**May, Judge.**

[1] Robert Helmer appeals a summary judgment for TLC Properties, the record owner of an easement on property Helmer bought at a tax sale. As the easement was recorded and the person who conveyed it to TLC had the authority to do so, we affirm.

## Facts and Procedural History

[2] Joseph M. Major and his wife Willie Mae owned some real estate in Gary. Willie Mae died in 1981 and Joseph died intestate in 1985. Their son, Joseph W. Major ("Major") was the sole heir. There was no administration of the intestate estate and the property remained titled in the names of Joseph M. Major and Willie Mae Major.

[3] In November 2006, Major executed an Affidavit of Heirship stating he was the son of Joseph M. Major, his father died intestate, and he was the sole heir. The next day, Major granted an easement to TLC. He recorded the easement in June 2008 but did not record the Affidavit of Heirship. Major died in January 2009.

[4] In 2012 the property was included in the Lake County tax sale. Helmer bought a tax sale certificate and was issued a tax deed in October 2013. In February 2014 Helmer brought a complaint to quiet title to the property against various defendants including TLC. Helmer and TLC made cross-motions for summary judgment and the trial court granted TLC's motion. It noted Major, as the sole surviving son, was "vested in a fee simple interest in the property upon the

death of both parents," (App. at 13), so he could properly sell an easement without any administration or affidavit.

## Discussion and Decision

When reviewing a summary judgment, we apply the same standard as that used in the trial court. *First Am. Title Ins. Co. v. Calhoun*, 13 N.E.3d 423, 430 (Ind. Ct. App. 2014). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Ind. Trial Rule 56(C)). The moving party has the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Only then must the non-movant come forward with contrary evidence showing there is a genuine factual issue that should be resolved at trial. *Id.* We construe all evidence and resolve all doubts in favor of the non-moving party, so as to avoid improperly denying him his day in court. *Id.*

The trial court was correct that Major, as sole heir, could sell the easement to TLC even though Major did not "place himself into the chain of title." (Br. of Appellant at 4.) Ind. Code § 29-1-2-1 provides the estate of a person dying intestate "shall descend and be distributed as provided in this section. . . . [T]he entire net estate if there is no surviving spouse, shall descend and be distributed . . . [t]o the issue of the intestate." *And see Demma v. Forbes Lumber Co.*, 181 N.E.2d 253, 255 (Ind. Ct. App. 1962) (title to real estate vests "immediately and

absolutely" in a person's heirs upon death), *reh'g denied*. There is no dispute that the property owned by Joseph M. Major and Willie Mae Major descended to Major when Joseph M. Major died.[1]

[7]     Ind. Code § 29-1-8-3(b) provides that if an estate that includes real property meets certain criteria, "an affidavit *may be recorded* in the office of the recorder in the county in which the real property is located."[2]  (Emphasis added.)  The

---

[1] Helmer asserts, without explanation or citation to authority, that because Major "chose to create an Affidavit and follow the probate statute, the common law of intestate succession does not apply." (Reply Br. of Appellant, Robert E. Helmer (hereinafter "Reply Br.") at 1).  Therefore, he says, "Major did not own the property by operation of common law because he chose to create an Affidavit, which was inadequate." (*Id*. at 1-2.)

We note initially that Major owns the property by virtue of Ind. Code § 29-1-2-1, not "the common law of intestate succession."  Regardless, Helmer has waived any allegation of error based on the premise Major did not own the property.  *See* Indiana Appellate Rule 46(A)(8)(a) (appellate argument must be a cogent argument supported by citations to authority); *and see West v. State*, 755 N.E.2d 173, 181 (Ind. 2001) (failure to make a cogent argument waives issue for appellate court's consideration).

Notwithstanding the waiver, we must decline Helmer's apparent invitation to hold Major did not acquire the property on the death of his parents because an affidavit he executed some twenty years afterward was "inadequate."  As explained below, Major was not required to provide an affidavit of heirship.  We decline to hold an owner of real estate in fee simple may be divested of that property interest solely because of an "inadequacy" in an affidavit he was never required to execute in the first place.

[2] We must address a number of Helmer's mischaracterizations of the trial court's order.  Helmer asserts "the trial court erred when it held that the TLC easement was properly recorded, with [Major] in the chain of title." (Reply Br. at 2.)  The trial court's order did not address the recording of the TLC easement and it made no such "holding" concerning recording or chain of title.  Helmer states "the trial court erred when it held that the Affidavit was properly recorded." (*Id*.)  The trial court's order includes no such holding.  Rather, the trial court explicitly found no affidavit was required and Major could convey the easement without one.  Helmer says the trial court erred when it found Major "satisfactorily completed an affidavit pursuant to the requirements of Indiana's probate statute to title the property in his name." (*Id*. at 1.)  Again, the trial court made no such finding.  To the contrary, it explicitly said Major was vested with fee simple interest in the property on the death of his parents and no affidavit was required.

We remind Helmer's counsel that such misstatements of the record may expose counsel to sanctions.  In *Young v. Butts*, 685 N.E.2d 147, 150 (Ind. Ct. App. 1997), which involved a traffic accident, Butts testified she was driving 60 miles per hour.  On appeal, Young's counsel stated the speed limit was fifty-five and asserted Butts was therefore speeding.  There was no evidence in the record to support that assertion; rather, the testimony in the record was that the speed limit was 65 miles per hour.  Young's appellate counsel then stated Butts "admitted in her testimony that she had been traveling at a rate of speed in excess of the limit for that particular area. . . . This admission, made under oath, is evidence that [Butts] was speeding." *Id*.  The record

affidavit must include the legal description of the real property and a statement including "the name of each person entitled to at least a part interest in the real property as a result of a decedent's death, the share to which each person is entitled, and . . . a statement explaining how each person's share has been determined." *Id.*

[8] The trial court correctly determined "an affidavit of heirship [under Ind. Code § 29-1-8-3(b)] is not required," (App. at 13), and Major therefore could "sell an easement . . . without any administration or affidavit."[3] (*Id*.) The statute explicitly says an heirship affidavit "may" be recorded. In *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 726 (Ind. Ct. App. 2009), we noted the rule of statutory construction that "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense. Technical words and phrases having a peculiar and

---

contained no such admission, nor was there any statement that could be interpreted as such an admission. We found the misrepresentations by Young's counsel "particularly offensive," *id*. at 151, because they would, if true, directly affect the propriety of the trial court's judgment. Because of the misstatements and various deficiencies in Young's brief, we found Young's appeal frivolous, without merit, and brought in bad faith, and we remanded for a determination of the appropriate amount of damages to be awarded Butts for the defense of the appeal. *Id*. at 151-52.

The misrepresentations by Helmer's counsel are offensive for the same reason; the allegedly erroneous "findings" and "holdings" Helmer attributes to the trial court would likely directly affect the propriety of summary judgment.

[3] Helmer asserts that because Major's affidavit did not meet certain statutory requirements, "the attempted use of an unrecorded affidavit *as a mechanism to transfer an interest in the Property* was legally invalid." (Br. of Appellant at 7.) Nothing in the language of section 29-1-8-3 indicates the affidavit serves as "a mechanism to transfer an interest" in real estate, and in this case Major's "interest" had been "transferred" years earlier by operation of law when his father died. As Helmer offers no argument why the adequacy *vel non* of the affidavit might affect Major's ownership, we are unable to address that allegation of error. *See, e.g.*, *Briggs v. Clinton Cnty. Bank & Trust Co. of Frankfort, Ind.*, 452 N.E.2d 989, 994 n.1 (Ind. Ct. App. 1983) (to the extent we did not "find cogent argument with appropriate citation to authority," Briggs waived any claimed error).

appropriate meaning in law shall be understood according to their technical import." *Id.* (quoting Ind. Code § 1–1–4–1). Specifically, we noted that when the language of a statute need not be interpreted "in a technical nature," we treat the words "may" and "shall" in their "plain and ordinary sense of being discretionary and mandatory respectively." *Id.*

[9] As the Child Support Guidelines language at issue in *Vandenburgh* did not need to be interpreted "in a technical nature," we held the language "may grant the noncustodial parent a credit toward his or her weekly child support obligation" meant what it said – the credit was not mandatory. *Id.* at 726. We accordingly declined to hold the trial court was obliged to grant parenting time credit just because Father asked it to and provided evidence that might permit such credit. *Id.* at 726-27.

[10] Nor will we characterize the phrase "If an estate described in subsection (a) includes real property, an affidavit may be recorded" as including "technical words and phrases having a peculiar and appropriate meaning in law." In this case, "may" means may. As Helmer was not required to execute the affidavit, we decline to hold his conveyance of an easement to TLC, which conveyance was itself properly recorded, was subsequently invalidated because the affidavit of heirship was not properly executed or recorded.

[11] Major owned the property burdened by the easement when he conveyed the easement, and he was not obliged to execute and record an affidavit of heirship

in order to make the conveyance.  We therefore affirm summary judgment for TLC.

[12]     Affirmed

Crone, J., and Bradford, J., concur.